[L. A. No. 799.   Department Two.—February 25, 1901.]

W. J. HAUGHAWOUT, Appellant, v. LAURA A. HUB-
BARD et al., Respondents.

131  675
f133 106
131  675
134  400
.d  675
e135 192
131  675
e136 252
131  675
e146 364
131  675
p148 312

STREET IMPROVEMENT—FUNCTIONS OF COUNCIL—DESCRIPTION OF WORK—
DELEGATION OF POWER—DETAILS OF CONSTRUCTION—DUTY OF EN-
GINEER.—It is the function of the city council, in ordering a street
improvement, to determine the nature or general character of
the work, and to describe the improvement or work to be con-
structed, and this function cannot be delegated; but such func-
tion does not involve the necessity of determining or describ-
ing the details of construction, the task of which is devolved by
law on the city engineer, and, with reference to these details,
the function of the council is simply that of supervision, and of
ultimately determining the cost of the work and the amount of
tax to be assessed upon it.

ID.—SPECIFICATIONS OF ENGINEER—DEFECTS NOT JURISDICTIONAL—ESTI-
MATE OF COST.—If the specifications of the engineer comply with
the essential condition that they must be accompanied by an
estimate of cost definitely determining the amount, and are
otherwise satisfactory to the council, its jurisdiction to order
the work is not affected by any defects of the engineer in pre-
paring the specifications.

ID.—DISCRETION OF SUPERINTENDENT OF STREETS—DETAILS NOT DETER-
MINED BY SPECIFICATIONS.—Under the provisions of the street law
that the work "must in all cases be done under the direction
and to the satisfaction of the superintendent of streets," etc.,
and that "all contracts made therefor must contain a provision
to that effect," it is the obvious intent of the law to devolve
upon the street superintendent a certain discretion, and to
make his judgment the criterion with reference to all questions
of detail not explicitly determined by the specifications or the
contract.

ID.—CONTRACT FOR SEWER—SPECIFICATION FOR DECISION OF STREET SUPER-
INTENDENT—POWER NOT IMPROPERLY DELEGATED.—A contract for a
sewer providing that the work shall be done in accordance with
the specifications therein referred to, which specify that "when
the ground does not afford a sufficiently solid foundation, the
contractor shall excavate the trench to such increased depth as
the street superintendent may decide to be necessary, and shall
then bring it up to the required level and form, with such mate-
rial and in such manner as the street superintendent may
direct," does not contain any improper delegation of power to
the street superintendent vested by law in the council.

APPEAL from a judgment of the Superior Court of Los An-
geles County.   Lucien Shaw, Judge.

The action was brought to foreclose an assessment for the construction of a public sewer in the city of Los Angeles, which, by the terms of the ordinance, was required to "be constructed in accordance with the plans and profiles on file in the office of the city engineer, and specifications on file in the office of the city clerk of the city of Los Angeles, said specifications being designated C and D." Further facts are stated in the opinion of the court.

H. J. Stevens, and A. B. McCutchen, for Appellant.

Mulford & Pollard, for Respondents.

THE COURT.—The suit was brought for the foreclosure of an assessment lien on a lot of the defendants in the city of Los Angeles for sewer work. The proceedings for the assessment are set out in detail in the findings. The judgment was for the defendants and the plaintiff appeals.

The ordinance for the work requires it to be done "in accordance with the plans and specifications on file in the clerk's office of the city of Los Angeles, said specifications being designated C and D." The ordinance of intention contains a similar provision. It is claimed by the respondent in effect that these specifications delegate to the street superintendent powers vested by the law in the council, and which it had no right to delegate.

The specification principally discussed in the briefs, and on the supposed insufficiency of which the decision of the lower court was rested, is as follows: "When the ground does not afford a sufficiently solid foundation, the contractor shall excavate the trench to such increased depth as the street superintendent may decide to be necessary, and shall then bring it up to the required level and form with such material and in such manner as the street superintendent may direct." The point of the objection is that the power is thus delegated to the street superintendent to determine whether the ground does or does not "afford a sufficiently solid foundation," and in the latter case the power to determine the depth of the excavation and the materials to be used in bringing the bottom of the ditch "to the required level and form." The former objection was overruled by the court below; the latter was sustained on the

supposed authority of *Bolton v. Gilleran,* 105 Cal. 244,[1] and cases following it.    The other objections are similar, but are of a more trivial character, and were regarded by the lower court as without merit.

It is assumed in these objections that, under the provisions of the law relating to the subject, it is the function of the council in ordering any improvement to determine in advance all the details of the construction; or, in other words, not only to make the specifications, but to make them so complete as to leave nothing to the discretion or judgment of the street superintendent.    But to this view of the law there are several decisive objections: First, the function of making the specifications is not imposed by the law on the council, but on the city engineer; the function of the council with reference to them is merely to order them to be made, and to see to it that they are accompanied by an estimate of the costs of the improvement, and are otherwise satisfactory.    Next, the law does not impose either on the council or the engineer the impossible task of making the specifications so complete.    And, finally, it is the obvious intent of the law to devolve upon the street superintendent a certain discretion with reference to the details of the work.    A brief review of the act relating to street improvements and of the several powers and functions imposed by it on the council and other municipal officers will establish these propositions.

1. By section 2 of the street work act the power is conferred on the city council "to order" any of the improvements therein specified.    (Finlayson's Street Laws of California, sec. 3, pp. 5, 9.)    This involves the function of determining the nature or general character of the improvement to be made, and this is also implied in the provision that "a resolution of intention" shall be made and published "describing the work"; by which is meant not the work or labor to be done, but the improvement or work to be constructed.    This function, obviously, can be performed only by the council, and if it be delegated, either in whole or in part, to the street superintendent, the assessment for the improvement will be void.    (*Bolton v. Gilleran, supra,* and cases cited.)

But the performance of this function does not involve the

---

[1] 45 Am. St. Rep. 33.

necessity of determining or describing the details of construction—a task for which the council is altogether unfitted. This task is devolved by the law on the city engineer, whose duty it is (in the case of sewer work) to make "plans and specifications and careful estimates of the costs and expenses thereof" (Finlayson's Street Laws of California, sec. 3, p. 9), which when approved become part of the contract to be awarded. (Finlayson's Street Laws of California, sec. 5, p. 42.) The function of the council with regard to these is simply that of supervision. Ultimately, it is its function to determine the cost of the work and the amount of the tax to be assessed for it (*Bolton v. Gilleran, supra*); and this implies that the specifications must be accompanied by an estimate of the cost definitely determining the amount. But if the specifications comply with this essential condition and are otherwise satisfactory to the council, its functions are fulfilled; nor, this condition being fulfilled, is its jurisdiction to order the work in any way affected by any defects in the work of the engineer in preparing the specifications. The provisions of the act in this regard are explicit. On the publication of a sufficient resolution of intention, "describing the work," and the lapse of the twenty-five days—the intervening conditions having occurred—the council is "deemed to have acquired jurisdiction to order . . . . the work," and all that is required of it in addition is that it shall require the specifications to be made and the cost of the work to be thus determined. It is clear, therefore, that the defects, if any, in the specifications are not to be regarded as defaults of the council in performing its functions, and that the power devolving on the street superintendent by reason of such defects cannot be regarded as a delegation of the powers of the council.

2. Hence, the objections made must be regarded as resting simply upon the supposed defects in the specifications and upon the proposition, assumed to be law, that these may affect the validity of the assessment. But there is nothing in the act to lead us to suppose that this was intended, and from the nature of the case a contrary intention must be inferred. The purpose of specifications is, indeed, to determine and prescribe the details of construction, but this can be effected only approximately. To some extent such details must depend on unantici-

pated contingencies, and can be determined only by the exigencies of the actual construction. The specifications must, therefore, always fail, more or less, in certainty or completeness of detail, and hence the most accurate and detailed specifications must leave unprovided for many questions arising in the course of the work as to kind and amount of work or materials and other details of construction. The question as to the sufficiency or insufficiency of specifications is, therefore, one merely of degree—that is, not whether they are certain or uncertain, but whether they are more uncertain than is desirable. To this question no general answer can be given; and hence, in the absence of specific provisions of the law, it must be regarded as immaterial to the validity of the assessment.

3. It follows from the essential nature of all specifications that many questions as to details must be left to the discretion of the officer superintending the construction—in this case the street superintendent—and that this must be the case with reference to all details that are in fact not determined by the specifications. This fact is too obvious to have been overlooked by the legislature. Accordingly, it is expressly provided by the act that the work "must in all cases be done under the direction and to the satisfaction of the superintendent of streets, and the materials used shall comply with the specifications and be to the satisfaction of said superintendent; . . . . and all contracts made therefor must contain a provision to that effect." (Finlayson's Street Laws of California, sec. 6, p. 61.) There is thus conferred upon the street superintendent not merely the power to see the specifications carried out, but a power or discretion beyond the specifications. This power is of course limited by the contract, and by the specifications as part thereof, but extends to all questions of detail not explicitly determined by the specifications, or the contract; and with reference to such questions his own judgment is by the express terms of the law, and of the contract itself, made the criterion. General rules may be prescribed by the council directing the exercise of this discretion; but this rather affirms than denies its existence.

The cases cited by the court are not inconsistent with this view of the law. In the case of *Bolton v. Gilleran, supra,* the assessment was indeed held to be void on account of defect in

the specifications, but the defect was that they did not contain a definite estimate of the cost of the work, but alternative estimates only, of which the one might exceed the other by about fifty per cent. The result was that there was a failure to perform either of the two essential functions imposed by the law on the council—namely, that of determining and describing the nature or general character of the work, and that of determining the amount of the burden to be imposed therefor by assessment on the property of the parties to be charged with the cost.

The cases of *Stansbury v. White*, 121 Cal. 433, and *Chase v. Treasurer etc.*, 122 Cal. 540, were decided solely on the authority of *Bolton v. Gilleran*, supra, and must be regarded as mere applications of the principle of that decision. (*Fisher v. Prince*, 3 Burr. 1364; *Osborne v. Rowlett*, 13 Ch. Div. 785.) In the former case the decision in *Warren v. Chandos*, 115 Cal. 382, is cited to the proposition that "a contract which gave to the superintendent of streets the power to increase or diminish the cost of the improvement after the contract had been entered into, by requiring a greater or less amount of material for its completion as he should determine . . . . [would render] the assessment invalid." Whether the contract in the case under consideration was of that character or otherwise does not appear from the report, but it seems that authority was given to alter the specifications, which is not the case here. In *Chase v. Treasurer etc.*, supra, the case was decided mainly on the grounds of insufficient publication of the resolution of intention. The specifications are referred to briefly, but are not set out or their effect stated.

It results from what has been said that on the facts found the judgment should have been for the plaintiff. The judgment is, therefore, reversed and the cause remanded, with directions to the lower court to enter judgment on the findings for the plaintiff.

Hearing in Bank denied.