[Civ. No. 329.   Third Appellate District.—June 20, 1907.]

MARY E. GUPTILL, Respondent, v. B. KELSEY, Appellant.

SANITARY DISTRICTS—PURPOSE OF LAW—POLICE POWER—PUBLIC COR-PORATIONS.—The purpose of the law of 1891 establishing sanitary districts is to enable communities having a small number of inhabitants to exercise, under corporate authority, as public corporations, to such limited extent as the legislature has prescribed, such portions of the police power of the state as will enable them effectually to promote and maintain healthful sanitary conditions within the boundaries of such districts.

ID.—POWER TO LEVY TAXES—METHODS OF COLLECTION.—Sanitary districts are given the power to levy taxes, and either to provide a special method for the collection thereof through their own appointed agent, or to transmit the assessment list to the county tax collector for collection thereof in the usual mode for the collection of other taxes, under the tax laws of the state.

ID.—COLLECTION BY TAX COLLECTOR—OFFICIAL DUTIES—TRUSTEES CAN-NOT CONTROL ACTION.—Since the terms of the sanitary tax law have expressly provided that when the assessment list is delivered by the tax collector for collection, he "shall collect the taxes shown by such list to be due, in the same manner as he collects county taxes, and all the provisions of the laws of the state as to

the collection of taxes and delinquent taxes and the enforcement thereof, so far as applicable, shall apply to the collection of taxes for sanitary purposes,'' the board of trustees of the sanitary district have no power under the law to control his action in any manner in the collection of sanitary taxes.

ID.—POWER NOT TO BE DELEGATED TO TRUSTEES.—Though the legislature might prescribe directly any proper method of procedure for the collection of sanitary taxes, it has no power to delegate to the trustees of a sanitary district the power to add any new or additional duties to the office of tax collector, as a county officer, to those imposed upon him by general laws.

ID.—CHANGE IN MODE OF COLLECTING TAXES—SALE TO STATE—UN-AUTHORIZED SALE TO INDIVIDUAL.—The legislature of 1895 made a radical change in the mode of selling property for taxes, requiring a sale to the state, and a sale for sanitary taxes, in the year 1899, to an individual conferred no title upon him under the tax law as amended.

ID.—COMPLAINT TO CANCEL TAX DEED.—A complaint to cancel a tax deed to an individual for the tax of 1899, which alleges that the tax laws as they stood when the sanitary tax law was passed in 1891, making it the duty of the purchaser of the property at a tax sale, or of his assignee, to serve upon the owner or occupant of the property, thirty days prior to the redemption of the property, a notice giving the date of sale, the amount of the property sold, and the amount for which it was sold, etc., were not complied with, sufficiently shows, as against a general demurrer, a cause of action to cancel the deed.

ID.—FAILURE TO COMPLY WITH STATUTE.—All the proceedings for the enforcement of taxes are *in invitum* and must be *stricti juris*. The failure to comply with the statute prescribing the proceedings essential to effecting a sale of property for delinquent taxes is fatally defective.

ID.—ACTION TO CANCEL VOID DEED—PROPER REMEDY.—An action under section 3412 of the Civil Code, which provides that ''a written instrument, in respect to which there is reasonable apprehension, that if left outstanding, it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or to be canceled,'' is a proper remedy to cancel a void tax deed, where it is peculiarly appropriate to the facts as pleaded in the complaint.

ID.—ACTION TO QUIET TITLE.—An action under section 738 of the Code of Civil Procedure could accomplish in effect nothing more nor less than the object of an action under section 3412 of the Civil Code to cancel a void tax deed.

APPEAL from a judgment of the Superior Court of Alameda County.   W. E. Greene, Judge.

The facts are stated in the opinion of the court.

Mortimer Smith, for Appellant.

Gavin McNab, for Respondent.

HART, J.—The complaint in this action alleges that, at the time of the institution of the suit, the plaintiff was the owner and seised in fee of certain real property situated within the boundaries of "Sanitary District No. 2, Fruitvale, County of Alameda, a corporation organized under the laws of the State of California," and that said real property was sold in the year 1899 by the tax collector of Alameda county to the defendant for unpaid and delinquent taxes assessed thereon by and for said Sanitary District No. 2, and that a tax deed to said lands was executed by said tax collector to said defendant on the thirteenth day of July, 1901.   It is alleged that "said deed has never been recorded, and that the plaintiff has never seen the same," and that "plaintiff is informed and believes, and upon her information and belief alleges that said tax deed is regular in form, and purports to convey title of all of said described lands to the defendant, B. Kelsey," etc.   It is charged in the complaint that several of the statutory provisions prescribing the steps necessary to be taken in order to effectuate a valid sale of property for delinquent taxes were not, in the sale by the tax collector of the property in question, complied with, and that, therefore, such sale was void.   It is averred that the price paid for the property to the tax collector by the defendant was the sum of $3.39, and that prior to the commencement of the action plaintiff "tendered in gold coin the sum of $3.39, with interest thereon, from the 3d day of July, 1899, and the sum of $3.00 additional, the said latter sum being the sum defendant paid to said tax collector for the issuance of said pretended deed, with interest thereon from the 13th day of July, 1901, and plaintiff offered to pay to said defendant the foregoing sums of money, and in addition thereto any additional sums that defendant might make known to the plaintiff that he had expended on account of or by

reason of said pretended tax deed, with interest thereon, provided defendant would deliver to plaintiff said pretended tax deed, or cancel said pretended tax deed," and that "defendant refused to accept said sums of money and refused to deliver to plaintiff said pretended tax deed, or to cancel the same, and still so refuses." It is further declared that plaintiff is ready and willing to pay into court for the benefit of the defendant the sums of money tendered by plaintiff to defendant before the commencement of the suit, or "any sums of money that this court may find as having been expended by defendant by reason of said pretended tax, or said pretended tax deed, with interest on said sums, and any other sums, or costs or expenses that said defendant may be found by this court to have expended or incurred in the matter of said pretended tax, or said pretended tax deed, with interest thereon."

The defendant interposed a general and a special demurrer to the complaint. The special demurrer charges that the complaint is uncertain in several specified particulars. The demurrer was overruled by the court, and the defendant failing to answer the complaint within the time granted him by the court, a judgment by default was entered against him. The appeal is from said judgment.

The legislature of 1891 passed a law embracing a scheme for the establishment of sanitary districts throughout the state, the manifest purpose of which is to enable communities consisting of small numbers of inhabitants to exercise, under corporate authority, to a limited extent, certain portions of the police power of the state. The main object of the law appears to be the authorization of the establishment of sanitary districts in such communities for the purpose of investing them with such corporate rights as will the more effectually enable the residents thereof to promote and maintain healthful sanitary conditions within the boundaries of such districts. Such corporations have no power, of course, except such as the legislature has legitimately clothed them with. While they are public corporations, they are not municipal corporations. (*In re Werner*, 129 Cal. 567, [62 Pac. 97].) The law from which they derive their right to exist provides, among other things, for the levying of taxes for the accomplishment of their corporate purposes upon all property within their boundary lines, and also provides for the incurring of a bonded indebtedness in a limited amount. The provision

with reference to the collection of the taxes levied authorizes two methods, either of which may, in the discretion of the sanitary board, be resorted to for the purposes of such collection. It is this provision which furnishes the principal one of the several reasons upon which the defendant bases his charge in the special demurrer and his contention in argument that the complaint is faulty because of uncertainty. The provision referred to is found in section 12 of the act, and reads as follows:

"On or before the first Monday in July of each year, the Board shall transmit, or cause the Assessor to transmit, a duplicate of the list so made to the Tax Collector of the county, who shall collect the taxes shown by said list to be due, in the same manner as he collects the county taxes, and all the provisions of the laws of the State as to the collection of taxes and delinquent taxes, and the enforcement of the payment thereof, so far as applicable, shall apply to the collection of taxes for sanitary purposes; and said Tax Collector, and the sureties on his official bond, shall be responsible for the due performance of the duties imposed on him by this Act; *provided,* that the Sanitary Board may, in its discretion, direct the District Attorney of the county to commence and prosecute suits for the collection of the whole, or any portion, of the delinquent taxes; and it shall be the duty of the District Attorney to carry out such directions of the Sanitary Board, and he, and the sureties upon his official bond, shall be responsible for the due performance of the duty imposed upon him by this Act; *and provided further,* that the Sanitary Board may, at any time, by order entered in its minutes, provide a system for the collection of delinquent taxes, or make any change in the manner of their collection, which as to such taxes shall have the force of law. All money collected for sanitary purposes by the District Attorney under this Act shall be at once paid to the County Treasurer." (Stats. 1891, p. 227.)

The specific contention is that where a law prescribes two different methods of performing an act, upon the due and proper execution of which depends the legality or validity of the result or product of such act, a party must first clearly disclose, by his complaint, which of the methods prescribed had been adopted for the performance of such act, and that a failure to so point out the particular method followed is fatal to a proper statement of a cause of complaint.

It is claimed that plaintiff's complaint is subject to this objection, for which reason the special demurrer should have been sustained upon the ground of uncertainty.

The complaint, in paragraph 2 thereof, alleges that "defendant B. Kelsey is the owner and holder of a certain deed made by the Tax Collector of the County of Alameda, and issued to and in the name of said B. Kelsey, by said Tax Collector, on the 13th day of July, 1901," and in paragraph 3 it is alleged that "said tax collector did on behalf of said Sanitary District No. 2, a corporation, and at its request, hold a pretended sale of said property for the nonpayment of said pretended taxes," etc. The statute, it will be observed, provides that the tax collector of the county, upon the transmission to him by the sanitary board, or by the assessor of such district, of a duplicate list of the assessments made in the district and for the purposes thereof, shall proceed to the collection of the taxes shown by said list to be due, "in the same manner as he collects the county taxes," and that "all the provisions of the laws of the State as to the collection of taxes and delinquent taxes, and the enforcement of the payment thereof, so far as applicable, shall apply to the collection of taxes for sanitary purposes." We think the complaint is sufficiently clear in its allegations as to the method for the collection of the taxes adopted by the board of trustees under the discretion in that particular conferred upon it by the statute to successfully resist the force of the special demurrer upon the point. Counsel for appellant does not question the sufficiency of the allegations of the complaint to show that the tax collector of Alameda county was the official to whom the sanitary board, under its power under the law, committed the duty of collecting the taxes, but declares that the tax collector, for aught that is shown by the complaint, might have acted, in the matter of the collection of the taxes, under the provisions of a system established by the sanitary board itself, and which might be altogether different from those of the system by which the tax collector must be governed in the discharge of his duties as a tax gatherer under the general laws of the state. It is, therefore, claimed that it was the duty of respondent to have shown by the pleaded facts that the sanitary board did not adopt a system of its own, as it is provided it may do by the law, or that the tax collector was not, if such were the fact, charged with the duty

of collecting the taxes in a mode or manner different from
that prescribed for the collection of state and county taxes.
This position finds no support in the language of the statute.
In the first place, there is, it seems to us, no conceivable ground
or reason upon which to rest a successful contradiction of the
proposition that the legislature has absolutely no power to
delegate to the sanitary board provided for in the act under
consideration the right or authority to confer upon a county
officer new or additional official duties.    The power of the
legislature to charge the tax collector with the duty of collect-
ing the taxes levied in and for the benefit of a sanitary dis-
trict in any proper manner it may deem wise to prescribe,
or to collect such taxes in the same manner as state and county
taxes are collected, cannot be questioned; but to undertake
to maintain that the manner or mode of discharging any
official duties which the general laws of the state require
that officer to perform may be changed by a mere regulation
of a sanitary board, or upon the mere whim or caprice of the
members of such board, is a proposition which can find no en-
couragement in any rule of law with which we are familiar
under our system of government.  In the second place, we
think it is manifestly clear that the legislature, in the enact-
ment of the law governing the organization of sanitary dis-
tricts, has not attempted nor indicated any intention of at-
tempting to invest such boards with any such power.   There
is, it is true, a provision in the law that the board may, at any
time, by order entered in its minutes, provide a system for the
collection of delinquent taxes, or make any change in the man-
ner of their collection, ''which as to such taxes shall have the
force of law.''   By this provision the legislature evidently in-
tended to grant to the board the right and authority to collect
the taxes levied for the purposes of the corporation through its
own agent, directly appointed by itself, and to enforce the col-
lection of such taxes by such regulations, consistent with the
general laws of the state, as it might deem prudent to adopt.
The act, as we have seen, by express language provides that
if the tax collector is called upon by the constituted authori-
ties of the corporation to collect the taxes, he must conduct
and perform that duty ''in the same manner as he collects
the county taxes,'' and that ''all the provisions of the laws of
the State as to the collection of taxes and delinquent taxes, and
the enforcement of the payment thereof, so far as applicable,

shall apply to the collection of taxes for sanitary purposes,''
and that he and his sureties on his official bond ''shall be responsible for the due performance of the duties imposed upon
him by this Act.'' The legislature itself, it thus clearly appears, has expressly pointed out how and in what manner the
tax collector of the county shall gather such taxes when called
upon to perform that duty by the sanitary board. The statute contains no language which can be interpreted or construed into giving the board any power whatever to authorize,
when the duty of collecting the sanitary taxes is imposed upon
the county tax collector, a departure from the mode prescribed
by the statute itself for the collection of such taxes by substituting therefor, through an order or regulation of its own,
another and different plan or mode by which that duty shall
be performed by that officer. In other words, the legislature
itself having prescribed the method and manner of collecting
such taxes by the tax collector of the county, there is no power
in the sanitary board to modify, amend or in any particular
change the provisions of the law respecting that subject.

The complaint charges that the proceedings in the matter
of the sale of property for the delinquent taxes, which were
required to be taken by the tax collector by sections 3764,
3765, 3766 and 3769 of the Political Code, as those sections
read in the year 1891, when the legislature passed the law
for the creation of sanitary districts, were not followed or
observed by that officer. The sections mentioned provided
for the sale of property upon which taxes were delinquent
to individuals. (See Stats. 1885, p. 326.) The legislature of
1895, however, made a radical change in the system of selling
property for delinquent taxes, and by said amendment authorized and required that all such property should be sold to
the state. It is obvious from the facts stated in the complaint
that there is no pretense that the property involved here was
sold in pursuance of the provisions of the law upon the
subject of tax sales as amended by the legislatures of 1895 and
1897. It is also alleged that the requirements of section 3785
of the Political Code, as it existed and read prior to said
amendments of 1895 and 1897, making it the duty of the purchaser of property at tax sale, or of his assignee, to serve upon
the owner or occupant of the property, thirty days prior to the
time of the redemption of the property, a notice, giving the
date of sale, the amount of property sold and the amount for

which it was sold, etc., were not complied with. The demurrer, of course, admits all the material allegations of the complaint to be true. The failure or omission of the tax collector, as charged in the complaint, to comply with all the provisions of the statute prescribing the proceedings essential to effecting a sale of property for delinquent taxes is fatally defective to a valid sale thereof. "All proceedings in the nature of assessing property for the purpose of taxation, and in laying and collecting taxes thereof, are *in invitum,* and must be *stricti juris.*" (*Weyse* v. *Crawford,* 85 Cal. 196, [24 Pac. 735]; *Hearst* v. *Eggleston,* 55 Cal. 365; *Shipman* v. *Forbes,* 97 Cal. 574, [32 Pac. 599]; *Gwynn* v. *Dierssen,* 101 Cal. 566, [36 Pac. 103]; *Merced County* v. *Helm,* 102 Cal. 159, [36 Pac. 399]; *Dranga* v. *Rowe,* 127 Cal. 509, [59 Pac. 944].) It will thus readily be perceived that the sale here was no sale at all under the law, and it necessarily follows that the purported tax deed executed by the tax collector to the defendant was and is void.

Counsel for appellant contends that respondent, by proceeding in this action under section 3412 of the Civil Code is "seeking to enforce the wrong remedy," and that, inasmuch as the facts pleaded show the deed held by defendant to be void and therefore no title under it acquired by appellant, the remedy of respondent was under section 738 of the Code of Civil Procedure. Some authorities are cited by counsel which he contends support this suggestion. But the point is technical in the extreme, even if it be admitted that, strictly viewing the proposition, it might be held that there is some merit in it. There is, however, in our opinion nothing in the contention. Section 3412 of the Civil Code provides that "a written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Section 738 of the Code of Civil Procedure provides for actions to quiet title by persons against others who claim an estate or interest in real property adverse to them. The remedy here invoked appears to be peculiarly appropriate to the facts as pleaded in the complaint. Besides, an action under section 738, Code of Civil Procedure, could accomplish in effect nothing more or nothing less than the object of the present action.

Other points are discussed which, under the views expressed in this opinion, it is unnecessary to consider.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.