[Civ. No. 19740.   First Dist., Div. Two.   Feb. 20, 1962.]

EAST BAY MUNICIPAL UTILITY DISTRICT, Plaintiff and Appellant, v. THE COUNTY OF CONTRA COSTA, Defendant and Respondent.

Harold Raines, John B. Reilley and Frank E. Howard for Plaintiff and Appellant.

John A. Nejedly, District Attorney, and Robert H. Betzenderfer, Deputy District Attorney, for Defendant and Respondent.

SHOEMAKER, J.—Plaintiff East Bay Municipal Utility District owns and maintains a system of water mains in the roads of defendant County of Contra Costa. In 1955, defendant county engaged in certain road construction work. In order to carry out the work, it became necessary to relocate certain of plaintiff's mains. Plaintiff relocated its mains subject to a later determination as to whether it or defendant should bear the cost thereof. Plaintiff did the work of reloca-

tion at a cost of $186,996.68, and then brought this action, seeking a declaration that defendant was required to reimburse it in that amount. The facts are without dispute, and judgment was entered that plaintiff was charged with the costs of the relocation. Plaintiff appeals upon the sole ground that the trial court erred in its application of the law.

Appellant acquired its right to construct water lines in the public streets by virtue of Public Utilities Code, section 12808. Pursuant to this provision, "A district may construct works across or along any street or public highway, . . . and it shall have the same rights and privileges appertaining thereto as are granted to municipalities within the State." Those rights and privileges which are granted to municipalities are set forth in section 10101 of the Public Utilities Code. They include "the right to construct, operate, and maintain water and gas pipes, mains and conduits, . . . sewers and sewer mains, . . . across, along, in, under, over, or upon any road, street, alley, avenue, or highway, . . . in such manner as to afford security for life and property."

In *State* v. *Marin Municipal Water Dist.* (1941) 17 Cal.2d 699 [111 P.2d 651] the court had occasion to construe section 10101 in its application to a district such as appellant. The sole question before the court was whether the utility district or the State of California was required to bear the costs of a water main relocation necessitated by state highway construction. The State Department of Public Works had relocated the main, upon the district's refusal to do so, and then brought suit pursuant to Streets and Highways Code, section 680, to recover the costs of moving the main.

Section 680 empowers the Department of Public Works to require any person who has placed any pipe, conduit, or other facility, upon any state highway, pursuant to any franchise, to move the facility at its own expense whenever necessary to insure the safety of the traveling public, or to permit highway improvements. In the event that the franchise holder refuses to relocate, the department, pursuant to Streets and Highways Code, section 722, may move the facility itself and bring suit to recover the costs of such removal.

The utility district contended that section 680 was inapplicable to it because its right to maintain water mains in the street was more than a mere "franchise." The district maintained that its right had been derived from two sources: the authorization given by the county board of supervisors, and

the privileges granted by the Legislature to municipalities pursuant to section 10101 of the Public Utilities Code (then uncodified). The court rejected this argument, holding that neither right constituted more than a mere franchise. In regard to the privileges granted by section 10101, the court stated, at pages 703-704: "Such a grant by the state to a public utility of the right to use the public streets and highways for the maintenance of equipment has always been considered a franchise by the courts of this state. The right granted to municipal corporations by the statute of 1923 [§ 10101] to use the public highways was held a franchise in *City of Los Angeles* v. *City of South Gate,* 108 Cal. App. 398 [291 P. 654.] The right granted to public utilities by article XI, section 19 of the California Constitution to use city streets for laying down and maintaining pipes was held a franchise in *San Jose Gas Co.* v. *January,* 57 Cal. 614. . . . In the present case the defendant's right of way in the state highway is likewise a franchise." The court decided that the utility district's franchise was subject to the rights of the state, pursuant to Streets and Highways Code, section 680, and required it to bear the expense of the relocation of its facilities.

Appellant does not now contend that it possesses any greater rights than did the municipal utility district in the Marin case. Appellant concedes that its right to place its mains in the streets is derived from respondent county and from the state Legislature, pursuant to Public Utilities Code, section 10101. Appellant further acknowledges that such rights have been judicially classed as mere franchise rights. ▆▆ Appellant contends, however, that the *county,* as opposed to the *state,* may not usurp such a franchise without cost to itself. Appellant points out that the state, pursuant to the specific legislative grant of Streets and Highways Code, section 680, has been granted the right to compel a relocation at the expense of the franchise holder. The county, on the other hand, has been granted no such authority, and may not, therefore, bring itself within the rule of the *Marin* case.

In two recent decisions, the California Supreme Court has clearly held that the right to compel a public utility to relocate facilities at its own expense exists independent of any specific legislative grant. In *Southern Calif. Gas Co.* v. *City of Los Angeles* (1958) 50 Cal.2d 713 [329 P.2d 289], and *Los Angeles County Flood Control Dist.* v. *Southern Calif.*

*Edison Co.* (1958) 51 Cal.2d 331 [333 P.2d 1], the court dealt with the power of a city and of a county flood control district to compel such a relocation. Although neither body derived its rights from any statutory authorization similar to that granted the state by section 680 of the Streets and Highways Code, the court based its decisions on the "implied obligation" to which the rights of a franchise holder are subject. In the *Southern Calif. Gas Co.* case, the court held that the City of Los Angeles could compel a privately owned public utility to relocate at its own expense certain gas lines installed pursuant to a county franchise. The relocation of the gas lines, which were located outside the city limits, was made necessary by certain sewer construction which the city had undertaken. Although no statute empowered the city to compel such a relocation, the court based its decision on the inherent nature of the franchise under which the utility had installed its lines. The court stated, at page 716: "In the absence of a provision to the contrary it has generally been held that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets." Since the laying of sewers constituted a governmental function, the city was therefore entitled to compel a relocation at the expense of the public utility.

Similarly, in the *Los Angeles County Flood Control Dist.* case, the court held that a county flood control district could compel a privately owned public utility to relocate its facilities at its own expense in order to make way for the construction of storm drains by the district.

Appellant contends, however, that the *Southern Calif. Gas Co.* and *Los Angeles Flood Control Dist.* cases are controlling only of the rights of privately owned public utilities. Since appellant is a publicly owned utility operating pursuant to Public Utilities Code, section 10101, appellant maintains that it must be accorded different treatment than a privately owned utility. We cannot agree with this contention. Appellant's right to place its facilities in the public streets, although granted by the state itself rather than by one of its political subdivisions, has been held to constitute a mere franchise. (*State v. Marin Municipal Water Dist., supra.*) Appellant, as a public utility, must be deemed to have accepted its franchise subject to an implied obligation to relocate its facili-

ties at its own expense to make way for proper governmental uses of the streets. The language of the *Southern Calif. Gas Co.* and *Los Angeles Flood Control Dist.* cases lends no support to appellant's theory that a publicly owned utility should be exempted from the obligation inherent in its franchise to use the public streets. To the contrary, the controlling factor in both of these decisions is the all-important distinction between a governmental and a merely proprietary use of the street. Where a utility, whether publicly or privately owned, has utilized the streets in its proprietary capacity, such a use must always give way before a proper governmental use of these streets by a political subdivision of the state. This distinction is clearly set forth in *Southern Calif. Gas Co.* v. *City of Los Angeles, supra,* where the court stated, at pages 717-718: "[T]he fact that a franchise is granted by one political subdivision as an agent of the state [citations] does not defeat the right of another such agent acting in its governmental capacity to invoke the public right for the public benefit. [Citations.] The fact that the city's use of county streets for its sewers is authorized by section 10101 of the Public Utilities Code has no bearing on the applicability of the foregoing rule. It is true that the rights granted to municipal corporations by that section have been held to constitute franchises subject to the paramount right of the state to make the streets safe for public travel (*State* v. *Marin Municipal Water Dist.,* 17 Cal.2d 699, 703-704 [111 P.2d 651]), but it does not follow that a franchise exercised by a city in its *governmental capacity* under that section is subordinate to a prior franchise granted to a public utility. The utility involved in the Marin case was a muncipal water district operating in a proprietary capacity. (See *City of South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 592-593 [93 P. 490].) In the present case, on the other hand, the city is exercising one of its most important governmental powers. . . . The *Marin* case itself recognized and applied the established rule that a utility's rights in the public streets are taken subject to the paramount right of public travel, and as stated above, the same rule applies between public utilities and municipal corporations using the streets for sewer purposes." (Emphasis partially added.) In the case at bar, respondent county was clearly engaging in a proper governmental use of the street when it undertook to improve and reconstruct its roads. Appellant, on the other hand, is a municipal utility district

operating in a proprietary capacity. Under such circumstances, appellant is required to relocate its facilities at its own expense.

Appellant next contends that a recent District Court of Appeal decision contains language in support of appellant's distinction between a publicly and privately owned utility. The case upon which appellant relies, *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.* (1960) 182 Cal.App.2d 176 [5 Cal.Rptr. 783], was based upon an entirely different set of facts from those present in the instant case. In the *Contra Costa* case, the sanitary district had installed its sewer line before the area in question became a county road. The court held that the case presented a "simple" situation "in which the sanitary district's right and easement to use Grayson Creek for its sewer line was prior in time . . . and therefore prior in right." (P. 178.) In the instant case, appellant had no such prior "easement," but installed its water lines by virtue of a franchise to use roads which had already been established by respondent county, hence the rule is not applicable here.

The rule set forth in the *Marin, Southern Calif. Gas Co.,* and *Los Angeles Flood Control Dist.* cases compels the conclusion that appellant must be required to relocate its facilities at its own expense.

Appellant's final contention is that the cost of relocating its facilities should be imposed upon respondent as a matter of equity. Such a contention is without merit. In *Southern Calif. Gas Co.* v. *City of Los Angeles, supra,* at page 720, the court quoted the following passage from the New York case of *Transit Commission* v. *Long Island R. Co.,* 253 N.Y. 345 [171 N.E. 565, 568] : " 'The reasonable construction . . . is to assume that the people are not to be burdened with any heavier expense than necessity requires, and that to relieve the public service corporations having franchises in the streets of their common-law liabilities and to pass them over to the taxpayer can only be accomplished by the express direction of the Legislature.' " As the trial court pointed out in its memorandum of decision, to require respondent county to pay for a relocation of appellant's facilities would be in derogation of respondent's duty to maintain the roads for the public convenience. "It would be highly inequitable to require the county to bear the expense of relocating them when necessi-

tated by the county exercising its paramount duty to maintain the county roads.''

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied March 12, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 18, 1962.